UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NORMAN BARBUTO,

                Plaintiff,

v.                              **DECISION AND ORDER**
                                        13-CV-651

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1. In this action, Plaintiff Norman Barbuto challenges an Administrative Law Judge's ("ALJ") determination that he was not disabled within the meaning of the Social Security Act ("the Act").

2. On September 22, 2010, Barbuto filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, claiming an inability to work due to disability beginning July 1, 2002. (R. 123-133.)[1] His applications were denied on April 12, 2011. (R. 59-60.) Barbuto then requested a hearing, which was held before ALJ David Lewandowski on June 20, 2012. (R. 25-52.) Barbuto was represented by counsel at the hearing, at which he appeared in person and testified. (Id.) At the hearing, Barbuto withdrew his claim under Title II of the Act and amended his disability onset date to September 22, 2010. (R. 28-29.)

3. The ALJ considered his Title XVI application *de novo* and, on July 9, 2012, issued a written decision finding Barbuto was not disabled. (R. 7-19.) Barbuto requested

---

[1] Citations to the administrative record are designated as "R."

1

review by the Appeals Council, which denied the request on April 29, 2013. (R. 1-4.) He commenced this civil action on June 20, 2013, challenging the Commissioner's final decision.[2]

4. On January 8, 2014, Barbuto filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure and, on February 21, 2014, the Commissioner filed a cross-motion for judgment on the pleadings. (Docket Nos. 10 and 15.) The motions were fully briefed on March 10, 2014, at which time this Court took the matter under advisement. For the reasons set forth below, the Commissioner's motion is granted and Barbuto's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barbuto v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

---

[2] The ALJ's July 9, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which

>is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.   Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.   In this case, the ALJ made the following findings with regard to the five-step process: (1) Barbuto had not engaged in substantial gainful activity since September 22, 2010 (R. 12); (2) his chronic obstructive pulmonary disease (COPD)/emphysema; degenerative disc disease, post surgery; and mood disorder were severe impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 13); (4) Barbuto had the residual functional capacity ("RFC") to perform

sedentary work; can occasionally climb, balance, stoop, kneel, crouch, crawl, push and pull; requires 15 minute breaks every two hours; must avoid irritants and temperature extremes; requires the use of oxygen; and is limited to simple instructions and simple tasks (R. 14); (5) he was not able to perform his past relevant work (R. 27); and (6) jobs existed in significant number in the national economy that an individual of his age, education, past relevant experience, and RFC could perform (R. 19).

11. Barbuto contends the determination that he could perform sedentary work is not supported by substantial evidence and that the ALJ did not properly assess his subjective complaints.

12. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). As explained in Social Security Ruling 83-10, "[b]y its very nature, work performed primarily in a seated position entails no significant stooping . . . [and] periods of standing or walking should generally total no more that about 2 hours of an 8-hour workday." 1983 SSR LEXIS 30, at *12-13. Barbuto urges that the ALJ was required to perform a function-by-function assessment of his ability to sit, stand, walk, and stoop, and that his implicit findings with regard to these functions are not supported by substantial evidence.

13. The Second Circuit recently held, in Cichocki v. Astrue, that failure to conduct a function-by-function analysis is not a *per se* error requiring remand:

> Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.

729 F.3d 172, 177 (2d Cir. 2013). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. Here, the Court finds the RFC analysis is sufficiently specific to allow for judicial review, and so will proceed to determine whether the RFC is supported by substantial evidence.

14.   In reaching his RFC determination, the ALJ discussed Barbuto's own statements, the objective medical evidence, and the findings of treating sources and consultative examiners. The ALJ also specified the weight he assigned to opinion evidence from treating and consultative sources.

Significantly, Barbuto testified that, if he was capable of doing a job correctly, he could perform work that entailed primarily sitting as he sits "pretty much the whole day." (R. 40-41.) The ALJ gave significant weight to the opinion of Barbuto's treating physician, Dr. Bais. On May 19, 2011, Dr. Bais completed an employability assessment form in which he assessed Barbuta as moderately limited in walking, standing, and sitting, and very limited in lifting, carrying, pushing, pulling, bending, and climbing. He opined that Barbuta was not disabled and could perform a seated/desk job, but might need 15-minute breaks every two hours to change position. (R. 563-64.) In according Dr. Bais's opinion significant weight, the ALJ expressly noted the opinion was consistent

with the objective evidence of the record and Barbuto's activities of daily living. He also found no indication in the record that Barbuto was disabled or had limitations greater than those included in the RFC.

While it is true the ALJ did not provide an express function-by-function analysis of Barbuto's ability to sit, stand, and walk, remand is not necessary here. Upon review, this Court finds the ALJ properly applied the treating physician's rule and adopted Dr. Bais's assessment that Barbuto's moderate limitations in sitting, standing, and walking limited him to sedentary work. SSR 96-2p, 1996 U.S. Dist. LEXIS 9 (July 2, 1996). Further, the RFC determination is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the administrative record.

15.     Barbuta also argues that, in making his RFC determination, the ALJ failed to properly assess his complaints of back pain. Step four of the sequential analysis involves a two-part inquiry. First, the ALJ must consider whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the pain or symptoms he alleges. <u>Sarchese v. Barnhart</u>, No. 01 Civ. 2172 (JG), 2002 U.S. Dist. LEXIS 13700, 2002 WL 1732802, at *7 (E.D.N.Y. July 19, 2002) (citing SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1529(b), 416.929(b). Then, if the claimant makes statements about his symptoms that are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility and determine the extent to which his symptoms truly limit his ability to perform basic work activities. <u>Id</u>.; SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *1. A federal court must afford great deference to the ALJ's credibility finding

so long as it is supported by substantial evidence. Bischof v. Apfel, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); see also Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the ALJ's determination [as to claimant's credibility] because he heard [claimant's] testimony and observed [his] demeanor.").

Here, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ ] residual functional capacity assessment. (R. 15.) The ALJ first summarized Barbuto's complaints that he "does not like to be around large groups of people, cannot lift more than 25 pounds due to back pain and shortness of breath, cannot stand more than 5-10 minutes or walk long distances without back pain, has to stand up after sitting 30-45 minutes because of back pain, and gets winded from climbing stairs." (R. 14, 162.) The ALJ then noted that, in a function report, Barbuto stated his typical day involves waking up his grandbaby for Headstart, letting his pets out, helping the baby with breakfast, starting some laundry, and washing dishes, stopping to rest between each chore to catch his breath. Similarly, he is able to clean, do laundry, do household repairs, and mow the lawn, with frequent stops to catch his breath. Barbuto shops for groceries but supports himself on the cart, watches TV all day, and sometimes plays games and cards with others in the house. Barbuto reported he has no problem getting along with people in authority, and can follow spoken and written instructions. (R. 15, 157-65.) As already noted, Barbuto testified at the hearing that he does not believe he would have a problem performing work while sitting.

Barbuto urges the credibility assessment is flawed because the ALJ incorrectly stated that "the claimant is not on any pain medication except for Lidoderm patches" (R. 17) when, in fact, he later was prescribed Lyrica (R. 509) and later still, Gabapentin (R. 567).[3] The records indicate these were medication changes, not additional prescriptions. Nevertheless, Barbuto urges the substitutions suggest his previous prescription(s) was ineffective in relieving his pain, necessitating a new regimen. While it is clear the ALJ did not correctly identify Barbuto's most current pain medication in the Decision, it also is clear he reviewed and considered the evidence regarding his treatment for back pain, Barbuto's own description of daily activities and his hearing testimony, none of which compels a conclusion that Barbuto's back pain is debilitating. Barbuto's only hearing testimony on his limitations due to back problems is that he "can't lift a lot of weight anymore . . . it puts a lot of strain on my back, and I'm afraid of hurting my back again." (R. 37.) He gave no testimony regarding pain. The ALJ's conclusion that allegations of debilitating pain were not credible was within his sole province as the trier of fact, and this Court has no authority to disrupt that finding unless it was patently unreasonable. Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997). On this record, the Court finds no basis to disturb the credibility finding.

\* \* \* \* \*

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED;

---

[3] Barbuto also states he was prescribed Amitriptyline for pain, but the record indicates this medication was prescribed for anxiety. (R. 509.)

FURTHER, that Defendant's Cross-Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: July 20, 2014
       Buffalo, New York

                                                         /s/William  M. Skretny
                                                         WILLIAM M. SKRETNY
                                                            Chief Judge
                                                       United States District Court